IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEBORAH JONES,<br><br>Claimant,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Respondent. | No. 17 C 5494<br><br>Magistrate Judge Jeffrey T. Gilbert |

## MEMORANDUM OPINION AND ORDER

Claimant Deborah Jones ("Claimant") seeks review of the final decision of Respondent Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"), denying Claimant's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 12.] The parties have filed cross-motions for summary judgment [ECF Nos. 14 and 22] pursuant to Federal Rule of Civil Procedure 56. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c). For the reasons stated below, Claimant's Motion for Summary Judgment [ECF No. 14] is granted, and the Commissioner's Motion for Summary Judgment [ECF No. 22] is denied. This matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

### I. PROCEDURAL HISTORY

Claimant applied for SSI benefits on March 31, 2013, alleging disability beginning September 18, 1972. (R. 20, 75.) The application was denied initially and upon reconsideration, after which Claimant requested an administrative hearing before an administrative law judge

("ALJ"). (R. 20.) On December 18, 2015, Claimant, represented by counsel, appeared and testified at a hearing before ALJ Melissa M. Santiago. (R. 20, 36–74.) The ALJ also heard testimony at the hearing from vocational expert ("VE") Cheryl Hoiseth. (R. 20, 68–73.)

On February 11, 2016, the ALJ issued an unfavorable decision denying Claimant's claim for SSI. (R. 17–35.) The opinion followed the five-step evaluation process required by Social Security regulations. *See* 20 C.F.R. § 416.920(a)(4). At step one, the ALJ found that Claimant had not engaged in substantial gainful activity ("SGA") since March 31, 2013, her application date. (R. 22.) At step two, the ALJ found that Claimant had the following severe impairments: osteoarthritis of the lumbosacral region and of both knees, depression, anxiety, neurocognitive disorder, mild borderline intellectual functioning, and substance abuse disorder. (*Id.*) At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ then determined that Claimant had the residual functional capacity ("RFC")[1] to:

> perform light work as defined in 20 CFR 416.967(b) except [Claimant] can only occasionally climb ramps, stairs, ladders, ropes, or scaffolds, and occasionally balance, stoop, kneel, crouch, and crawl. Further, [Claimant] is limited to simple, routine instructions and tasks, with no assembly line work, and a low stress work environment where changes are infrequent and gradually introduced. Finally, [Claimant] can have only occasional interaction with the general public, coworkers, and supervisors.

(R. 24.) Based on this RFC, the ALJ found at step four that Claimant was unable to perform any past relevant work. (R. 28–29.) Finally, at step five, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Claimant can perform, such as

---

[1] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. § 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

2

housekeeping cleaner, cafeteria attendant, and laundry worker. (R. 29–30.) Because of this determination at step five, the ALJ found that Claimant was not disabled under the Act. (R. 30.) The Appeals Council declined to review the matter on May 31, 2017 (R. 1–5), making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court. *See* 42 U.S.C. § 405(g); *Haynes v. Baumhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). Judicial review is limited to determining whether the ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations omitted). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even where there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (internal quotations omitted). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534

F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

### III. ANALYSIS

Claimant alleges numerous errors on appeal. Claimant contends that the ALJ (1) did not properly evaluate the opinions of the psychiatrists who examined her; (2) failed to consider and account for her post-traumatic stress disorder ("PTSD") and its associated limitations; (3) improperly assessed her credibility; and (4) failed to resolve a conflict between the VE's testimony and the Dictionary of Occupational Titles. [ECF No. 15, at 9–15; ECF No. 24.]

#### A. The Examining Psychiatrists' Opinions

The Court first addresses Claimant's argument that the ALJ did not properly evaluate the opinions of the psychiatrists who examined her. [ECF No. 15, at 10–13; ECF No. 24, at 3–7.] The "ALJ must consider all medical opinions in the record." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013); *see* 20 C.F.R. § 416.927(b), (c).[2] In doing so, the ALJ is not generally required to credit an examining physician's opinion "in the face of a contrary opinion from a later reviewer or other compelling evidence." *See Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). Nonetheless, if the ALJ discounts an examining physician's opinion, she must provide a "sound explanation" for this decision. *See Anderson v. Berryhill*, No. 17 C 0958, 2017 WL 6759021, at *4 (N.D. Ill. Dec. 19, 2017). This is particularly necessary when the ALJ discounts the opinion of a physician who examined the claimant on the SSA's behalf. *See Beardsley*, 758 F.3d at 839

---

[2] Last year, the Social Security Administration ("SSA") adopted new rules regarding the evaluation of medical evidence. *See* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Because these rules only apply to disability applications filed on or after March 27, 2017, they are not applicable in this case. *See id.* at *5844; 20 C.F.R. § 416.920c (noting that § 416.927 applies to claims filed before March 27, 2017).

4

(explaining that "rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled" is an "unusual step" requiring a "good explanation").

After she applied for SSI benefits, Claimant was examined by three psychiatrists: (1) Henry Fine, M.D., who examined Claimant in July 2013 at the SSA's request; (2) Mark A. Amdur, M.D., who examined Claimant in September 2013 at the request of her attorney; and (3) Myrtle Mason, M.D., M.P.H., who examined Claimant in March 2014 at the SSA's request. (R. 387–91, 393–97, 427–33.) Each psychiatrist provided a written psychiatric evaluation reflecting his or her examination of Claimant. (*Id.*) In addition, Lionel Hudspeth, Psy.D. and David Voss, Ph.D., state agency psychological consultants, reviewed the medical evidence and gave opinions regarding Claimant's mental capabilities and limitations. (R. 28, 76–106.)

The ALJ did not state how much weight she gave to Dr. Fine's evaluation. (R. 26–28.) She assigned little weight to Dr. Amdur's evaluation. (R. 27.) The ALJ also assigned little weight to the Global Assessment of Functioning (GAF)[3] score found in Dr. Mason's evaluation, but she did not indicate how much weight she gave to any other portion of Dr. Mason's evaluation. (R. 26–28.) As for the opinions of Drs. Hudspeth and Voss, the ALJ gave them great weight. (R. 28.) Ultimately, the Court finds that remand is necessary because the ALJ's consideration of the examining psychiatrists' evaluations was legally inadequate or erroneous.

As an initial matter, the Court is not persuaded by the Commissioner's contention that "[b]y accepting and giving great weight to Dr. Voss's opinion, the ALJ incorporated by reference Dr. Voss's analysis of all" three of the examining psychiatrists' evaluations. [ECF No. 23, at 4.] Although Dr. Voss reviewed and analyzed these evaluations (R. 91–93, 96–101, 105–06), the

---

[3] "The GAF is a 100-point metric used to rate overall psychological, social, and occupational functioning, with lower scores corresponding to lower functioning." *Lanigan v. Berryhill*, 865 F.3d 558, 561 n.1 (7th Cir. 2017).

Commissioner cites no legal authority to support the notion that the ALJ could use incorporation by reference to satisfy her "obligation to articulate enough analysis in her opinion to build an accurate and logical bridge from the evidence to her conclusion[s]." *Edwards v. Colvin*, No. 14 CV 1345, 2016 WL 1271049, at *4 (N.D. Ill. Mar. 29, 2016). Moreover, the Court confines its "review to the rationale offered by the ALJ," *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011), and here, the ALJ did not indicate that her analysis of the examining psychiatrists' evaluations relied in any way upon Dr. Voss's analysis. (*See* R. 26–28.) To the contrary, the ALJ appears to have disagreed with Dr. Voss's analysis in at least one respect: whereas Dr. Voss would have assigned some (although not great or controlling) weight to Dr. Amdur's evaluation, the ALJ gave this evaluation even less weight, i.e., little weight. (R. 27, 101.)

Therefore, the Commissioner's post-hoc rationalization does not hold water here. Merely giving great weight to Dr. Voss's opinion in no way constituted a proper analysis of Claimant's examining psychiatrists' evaluations. Nor did the ALJ otherwise analyze these evaluations, as discussed below.

### 1. Dr. Fine's Evaluation

In July 2013, Dr. Fine examined Claimant at the SSA's request. (*See* R. 387.) Dr. Fine diagnosed Claimant with severe PTSD, a non-specified neurocognitive disorder, and substance use (from apparent ongoing cocaine use). (R. 390.) He also opined about Claimant's mental limitations, explaining that a mental status examination demonstrated "immediate memory deficit, poor fund of information, problems with understanding simple directions, problems calculating, problems abstracting, and problems comparing and contrasting." (*Id.*)

Although the ALJ summarized Dr. Fine's psychiatric evaluation in her decision, she never explained how much weight she gave to it. (R. 26.) Summarizing evidence, though, is not the

same as analyzing it. *Perry v. Colvin*, 945 F. Supp. 2d 949, 965 (N.D. Ill. 2013). And by failing to explain how much weight she gave to Dr. Fine's evaluation, the ALJ failed to "minimally articulate her reasons for crediting or rejecting evidence of disability," as she was required to do. *See Edwards*, 2016 WL 1271049, at *4 (internal quotations and alterations omitted); *see also Reyes v. Colvin*, No. 14 C 7359, 2015 WL 6164953, at *11 (N.D. Ill. Oct. 20, 2015) ("[T]he ALJ must assign weight to each opinion and minimally articulate his reasons for so weighting.") (internal quotations omitted); 20 C.F.R. § 416.927(c) ("[W]e will evaluate every medical opinion we receive.").

More of an explanation is particularly necessary here because it appears that the ALJ gave Dr. Fine's evaluation *some* weight, although it is unclear how much. On one hand, the ALJ cited Dr. Fine's evaluation to support her findings that Claimant exhibited moderate difficulties in social functioning and maintaining concentration, persistence, or pace. (*See* R. 23.) The ALJ also cited Dr. Fine's evaluation to support her reliance on the opinions of Drs. Hudspeth and Voss (the state agency psychological consultants) and to support the mental restrictions in her RFC assessment. (R. 28.) On the other hand, it appears that the ALJ then used findings from Dr. Mason's subsequent evaluation to discount Dr. Fine's evaluation in some unspecified manner. (*Id.*) And the Court is puzzled as to how the ALJ could determine that Claimant had the ability to understand "simple, routine instructions" (R. 24) while, at the same time, crediting Dr. Fine's determination that Claimant has "problems with understanding simple directions," as the two determinations appear to blatantly contradict each other. (R. 28, 390.) On remand, the ALJ should thoroughly explain the weight she affords to Dr. Fine's evaluation and, particularly, if and how the evaluation supports the mental restrictions assessed by other physicians and incorporated into her RFC. *See Cole v.*

*Astrue*, No. 09 C 2895, 2011 WL 3468822, at *7 (N.D. Ill. Aug. 8, 2011) ("Assigning weight to medical statements is a fundamental duty of an ALJ.").

Conceding that the ALJ failed to explain how she weighed Dr. Fine's evaluation, the Commissioner argues that the evaluation did not contain a "medical opinion" to weigh. [ECF No. 23, at 3.] The Court does not agree. A medical opinion is a statement that reflects "judgments about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions." 20 C.F.R. § 416.927(a)(1). Here, as the ALJ recognized, Dr. Fine diagnosed Claimant with, among other things, severe PTSD and a neurocognitive disorder. (R. 26, 390.) Dr. Fine also opined about Claimant's mental limitations, explaining that a mental status examination demonstrated "immediate memory deficit, poor fund of information, problems with understanding simple directions, problems calculating, problems abstracting, and problems comparing and contrasting." (R. 390.) In fact, the ALJ implicitly recognized these findings addressed Claimant's mental limitations, as she used them to support the weight she gave to Dr. Hudspeth's and Dr. Voss's opinions regarding Claimant's limitations in daily living, social functioning, and concentration, persistence, or pace. (R. 26, 28.) The Court is not convinced that the ALJ could forego explicitly addressing and weighing Dr. Fine's evaluation under these circumstances, and the Court is unwilling to credit some kind of an implicit evaluation of Dr. Fine's opinion on this record.

2. **Dr. Mason's Evaluation**

In March 2014, another psychiatrist, Dr. Mason, examined Claimant at the SSA's request. (*See* R. 427.) Dr. Mason diagnosed Claimant with major depressive disorder with mood congruent psychotic features, PTSD, substance abuse disorder (heroin abuse), and a non-specified cognitive

disorder, with illiteracy and incarceration as stressors. (R. 432–33.) Dr. Mason also gave Claimant a GAF score of 48. (R. 433.) As part of her examination, Dr. Mason noted, among other things, that Claimant was cooperative, though she was easily confused and had difficulties clarifying information; that Claimant's mood seemed tense and anxious; that there was no evidence during the examination of any perceptual disorder; that there was no disturbance in the form or content of Claimant's thoughts; that Claimant was well oriented to time, place, person, and date; and that her sensorium seemed clear, although Claimant's information was confusing. (R. 431.)

The ALJ gave Dr. Mason's GAF assessment "little weight" because it had "very limited probative value in determining [Claimant's] actual functional limitations." (R. 27–28.) Specifically, the ALJ reasoned that the GAF score was only "a snapshot of functioning at the time of the examination" and did not "reflect any specific limitations . . . determinative of overall disability." (R. 27.) The ALJ did not otherwise assign any weight to the rest of Dr. Mason's evaluation. (R. 26–28.) Nonetheless, she found that certain findings from Dr. Mason's evaluation justified discounting Dr. Amdur's evaluation and suggested a capability for simple work. (R. 27–28.) The ALJ's analysis of Dr. Mason's evaluation was erroneous.

The ALJ first erred in rejecting Dr. Mason's GAF assessment. Even though another metric has replaced the GAF, GAF scores still constitute relevant medical opinion evidence. *Gerstner v. Berryhill*, 879 F.3d 257, 263 n.1 (7th Cir. 2018); *Knapp v. Berryhill*, --- F. App'x ----, 2018 WL 3409606, at *4 (7th Cir. July 12, 2018). And the inherent limitations of a GAF score alone do not justify its outright rejection. *See Knapp*, 2018 WL 3409606, at *4 (finding that the "snapshot" and subjective attributes of GAF scores did not constitute "sound reasons" for assigning them little weight); *Walker v. Astrue*, No. 10 C 7239, 2011 WL 4639841, at *15 (N.D. Ill. July 13, 2011)

9

("The ALJ was not entitled to simply reject out of hand as 'unreliable' [a GAF score, which] the Seventh Circuit has held probative on the question of disability.").

Claimant's GAF score of 48 reflects "serious symptoms or serious impairment in social or occupational functioning, for example, the inability to keep a job." *Campbell v. Astrue*, 627 F.3d 299, 302 (7th Cir. 2010); *see also Knapp*, 2018 WL 3409606, at *1 (noting that GAF scores "from 41 to 50 indicat[e] serious difficulty functioning psychologically, socially, and occupationally"). True, Claimant's GAF score is not dispositive, and it does not speak precisely to Claimant's work-related mental limitations. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (a GAF "score does not reflect the clinician's opinion of functional capacity"); *Walker*, 2011 WL 4639841, at *14–15. At the same time, though, Claimant's GAF score does not "represent functioning within normal limits," and it does not support a conclusion that Claimant "was mentally capable of sustaining work." *See Campbell*, 627 F.3d at 307; *Walker*, 2011 WL 4639841, at *15 (GAF score that never reached above 48 was objective evidence supporting a physician's opinion that the claimant was "unable to work in any capacity"). On remand, the ALJ should ensure that her analysis explains if and how Dr. Mason's GAF assessment is consistent (or inconsistent) with the other medical evidence or, alternatively, order additional testing to better understand how this assessment fits into the overall evidence of record. *See Knapp*, 2018 WL 3409606, at *4 ("[T]he ALJ was not permitted, without referring to medical evidence or ordering additional testing, to reject Dr. Boen's GAF ratings.").

The ALJ also failed to explicitly explain how much weight she gave to the remaining aspects of Dr. Mason's evaluation. (*See* R. 26–28); *see Edwards*, 2016 WL 1271049, at *4 (an ALJ's failure to explain how much weight she gives to a medical opinion constitutes an erroneous failure to "minimally articulate her reasons for crediting or rejecting evidence of disability")

(internal quotations and alterations omitted). And although it appears that the ALJ did credit some portions of Dr. Mason's evaluation, she failed to "build an accurate and logical bridge" from this evidence to her findings. *Edwards*, 2016 WL 1271049, at *4. The ALJ then compounded this failure by impermissibly ignoring the other portions of Dr. Mason's evaluation. *See Campbell*, 627 F.3d at 306 ("An ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability.").

For instance, according to the ALJ, Dr. Mason's findings that Claimant displayed no evidence of a perceptual disorder or thought disturbances and was well oriented to time, place, person, and date with a clear sensorium suggested a capability for simple work. (R. 28, 431.) But the ALJ never explained how these aspects of Dr. Mason's evaluation translate into such a capability. Moreover, in coming to this conclusion, the ALJ ignored Dr. Mason's findings that Claimant also appeared to be easily confused and exhibited difficulties clarifying information. (*Id.*) The ALJ also ignored Dr. Mason's diagnosis of major depressive disorder with mood congruent psychotic features (R. 26–28, 432), a condition where one experiences hallucinations and delusions. *See Major Depression with Psychotic Features (Psychotic Depression)*, https://www.healthline.com/health/depression/psychotic-depression (last visited Aug. 29, 2018). Notably, the ALJ's decision does not contain any explanation as to how Claimant would be capable of simple work despite her hallucinations or delusions. (R. 28.)

The Commissioner contends that the ALJ properly followed the analysis of Dr. Voss to assess Dr. Mason's evaluation. [ECF No. 23, at 5–6.] But there is no indication that the ALJ, in fact, did so. Even if Dr. Voss noted "that Dr. Mason did not provide any opinion as to how much [Claimant] could do despite her impairments except for the GAF score," as the Commissioner contends, the ALJ never suggested that the non-GAF aspects of Dr. Mason's evaluation did not

11

constitute medical opinions. [ECF No. 23, at 5.] To the contrary, the ALJ relied upon Dr. Mason's findings regarding Claimant's orientation, sensorium, and lack of exhibited perceptual disorder and thought disturbances to support her RFC assessment. (R. 28.) Nor did the ALJ ever suggest that she discounted Dr. Mason's evaluation because it took Claimant's information at "face value." *See* ECF No. 23, at 5 (citing *Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013) for the proposition that an opinion based on subjective complaints may be discounted). The ALJ's only analysis of Dr. Mason's evaluation addressed her GAF assessment. (R. 27–28.) By using Dr. Voss's purported analysis to supplement the ALJ's analysis, the Commissioner impermissibly attempts to advance an explanation the ALJ did not herself articulate. *See Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012).

### 3. Dr. Amdur's Evaluation

Claimant's attorney also requested a psychiatric examination, which was performed in September 2013 by Dr. Amdur. (R. 393.) In his psychiatric evaluation, Dr. Amdur diagnosed Claimant with mild mental retardation (IQ estimated to be 69 or below) and PTSD with associated anxiety and agoraphobia. (R. 397.) Dr. Amdur opined that Claimant would be unable to follow written instructions, perform any job requiring the simplest calculations or the simplest appreciation of quantitative concepts, travel independently to a work site, and tolerate work stresses. (*Id.*) He also opined that Claimant would have difficulty relating to any male coworkers or supervisors. (*Id.*) The ALJ acknowledged these diagnoses and opinions; however, she reasoned that Dr. Amdur's evaluation warranted little weight because Dr. Mason's later examination (discussed above) found Claimant not so restricted, "as she was cooperative, though easily confused and with difficulty clarifying information, but displayed no evidence of any perceptual disorder and no disturbance in the form or content of her thoughts." (R. 27) (citing R. 430–31.)

The ALJ did not provide a "sound explanation" for giving Dr. Amdur's evaluation little weight. *See Anderson*, 2017 WL 6759021, at *4. That Claimant was cooperative during Dr. Mason's examination does not contradict Dr. Amdur's opinion, because Claimant was also cooperative during Dr. Amdur's examination. (R. 27, 396.) And Dr. Mason's observation that Claimant was easily confused and had difficulty clarifying information seems to be consistent (or at least not inconsistent) with Dr. Amdur's findings that Claimant had significant cognitive impairment. (R. 396–97.) As for Dr. Mason's observations regarding the lack of a perceptual disorder and thought disturbances, it is unclear how these observations relate to, or are inconsistent with, Claimant's inability to follow written instructions, perform calculations or appreciate quantitative concepts, travel to a work site, tolerate work stresses, or relate to male coworkers and supervisors. Although the ALJ was permitted to discount Dr. Amdur's evaluation based upon later evidence, *see Beardsley*, 758 F.3d at 839, she had to explain how such evidence called into question Dr. Amdur's opinion. *See Frobes v. Barnhart*, 467 F. Supp. 2d 808, 819 (N.D. Ill. 2006) ("If the ALJ concludes that the treating physician's opinion is inconsistent with other evidence, she must explain the inconsistency."). By failing to do so here, the ALJ did not build the requisite "accurate and logical bridge" between the evidence and her decision to give Dr. Amdur's evaluation little weight. *See Edwards*, 2016 WL 1271049, at *4.

The Commissioner attempts to bolster the ALJ's lack of explanation by pointing to Dr. Voss's conclusions regarding Dr. Amdur's evaluation and by contending that the ALJ's analysis was correct because "none of the supposed paranoid trends, extensive obsessional thought, or accelerated speech that Dr. Amdur noted were present during Dr. Mason's examination (or elsewhere in the record)." [ECF No. 23, at 4–5.] But the ALJ did not rely upon Dr. Voss's conclusions to justify her analysis of Dr. Amdur's evaluation. (R. 27.) Nor did the ALJ note that

13

evidence regarding Claimant's paranoid trends, obsessional thought, or accelerated speech was missing from Dr. Mason's evaluation or anywhere else in the record. (*Id.*) Again, the Court's review is confined to the rationale found in the ALJ's decision, and the Commissioner on appeal cannot advance an explanation the ALJ did not articulate or rely upon evidence the ALJ did not consider. *See Scott*, 647 F.3d at 739; *Arnett*, 676 F.3d at 593. Dr. Voss's conclusions and the Commissioner's argument cannot provide the requisite explanation, which must come from the ALJ. And, here, the ALJ provided no such explanation.

### 4. The ALJ's Analysis on Remand

In sum, the ALJ failed to adequately and properly analyze the psychiatric evaluations of Drs. Fine, Amdur, and Mason, which requires remand. On remand, the ALJ should explicitly state the weight that she gives to each of the psychiatric and psychological evaluations in the record (including the evaluations of the state agency consultants) and explain each decision by applying the factors set forth in 20 C.F.R. § 416.927(c). *See Knapp*, 2018 WL 3409606, at *3; 20 C.F.R. § 416.927(c)(1)–(6). In doing so, the ALJ should bear in mind that "all other factors being equal, the opinions of non-examining physicians merit less weight than those of examining" physicians. *Samaha v. Colvin*, No. 14 CV 7405, 2016 WL 6476542, at *3 (N.D. Ill. Nov. 2, 2016); *see* 20 C.F.R. § 416.927(c)(1) ("Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you."). Relatedly, discounting or rejecting the evaluations of Drs. Fine and Mason, who examined Claimant on behalf of the SSA, would be an "unusual step" that should be accompanied by "a good explanation." *See Beardsley*, 758 F.3d at 839. Lastly, in addressing the specialization of the physicians who gave evaluations (see § 416.927(c)(5)), the ALJ should consider that Drs. Fine, Amdur, and Mason are psychiatrists, whereas Drs. Hudspeth and Voss are psychologists. *See*

14

*Scott*, 647 F.3d at 740 (fact that treating physician was a psychiatrist favored crediting her over a psychologist); *Koelling v. Colvin*, No. 14 CV 50018, 2015 WL 6122992, at *10 (N.D. Ill. Oct. 16, 2015) ("A 'psychological specialist' does not trump a psychiatrist.").

**B.     Other Issues**

Because the Court is remanding only on the errors identified above, it need not explore in detail the other arguments posited by Claimant on appeal since the analysis would not change the result in this case. The Commissioner, however, should not assume that the Court agrees with the ALJ's analysis of those issues. Nor should Claimant assume that the Court disagrees with the ALJ's analysis of those issues. Rather, it is simply unnecessary for the Court to lengthen this Memorandum Opinion and Order by addressing Claimant's other arguments in a case that is being remanded anyway.

## IV. CONCLUSION

For the reasons discussed in the Court's Memorandum Opinion and Order, Claimant's Motion for Summary Judgment [ECF No. 14] is granted, and the Commissioner's Motion for Summary Judgment [ECF No. 22] is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated:   October 9, 2018